UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2007 JUL 13 P 1: 23
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| MADHU JAIN,   )<br>  PLAINTIFF    )<br>v.               )<br>A CAPE ANN WHALE   )<br>WATCH, INC.    )<br>  DEFENDANT    )<br>_____ ) | C.A. No. 05 11267 MEL |

## PLAINTIFF'S POST TRIAL MEMORANDUM

On August 19, 2004 plaintiff, Madhu Jain, fell on defendant's gangplank and suffered two fractures. Extensive testimony set out later in this memorandum explicitly demonstrates that the gangplank was slippery and that other passengers had difficulty walking on it, as well. That testimony further demonstrates the as specious the defendant's allegation that Ms. Jain was not holding on to the rails. There was testimony by the defendant that the gangplank had a known history of slipperiness.

Ms. Madhu Jain badly fractured her ankle while descending the gangplank of defendant's large whale watch ship because the gangplank was slippery and no handrail was available at the top of the gangplank where she fell. Five witnesses have testified that the makeshift gangplank was slippery. Another witness testified that it was wet. Three of these witnesses were not members of the Plaintiff's party. No one testified that the gangplank was not slippery at the time of the fall.

Ms. Jain went by ambulance to the Addison Gilbert Hospital and was thereafter transferred to Beverly Hospital for multiple open fracture reductions. A 1/3 tubular plate and seven screws were permanently placed upon the long bone of her lower leg and an additional two

long cortical screws were placed upward through her medial malleous. She went from using a walker to crutches, and she subsequently underwent physical therapy. She is permanently disabled and suffers decreased basic mobility. Her right leg is disfigured with scars on both sides of her ankle and enlargement of the ankle.

Diamond plate is never used on real gangplanks. This was not a gangplank, but a piece of Webber scaffolding with rail assembly leaned against the ship. Most gangplanks are manufactured as such, and since the Defendant claims hundreds of thousand passengers passing over this one, they should have invested in a better one. Abrasive non-skid materials are safer. Defendant had an obligation to correct dangerous conditions it knew about or should have, through reasonable care known about and should have bought a gangway with a nonskid surface or put nonskid and battens on this one.

Reasonable care under these circumstances would have included warning Ms. Jain that the gangplank was slippery so she could prepare herself. Better still, the defendant could (a) reduce the gangplank's steep slope by making the gangplank longer than 8 feet; (b) supply continuous handrails all the way to its top; (c) use abrasive paint on the gangplank; (d) replace the gangplank's surface; (e) remove the four clamps from the handrail so that it could be grasped along its entire length; (f) use movable stairs and/or make the gangplank wider to fit the opening in the ship and to eliminate the side spaces; (g) make the top of the gangplank flush with the ship so that passengers would not have to step up to get onto the ship; (h) put down a drying agent; and (i) use proper rails.

Many of the above problems exist because Defendant improvised the gangplank from scaffolding. These scaffolding rails pull away when at an angle (this caused the absence of rail at the top of this gangplank).

It is undisputed that, on the day of injury, passengers had to take a step up to get onto the gangplank and that a line of passengers that had formed were taking turns getting onto the gangplank. Departing passengers were not able to completely comprehend the gangplank and its surroundings until they had actually stepped onto it. The gangplank was the sole available way to get off the ship.

The most easily provable theory of negligence is that passengers had to be informed that the gangplank might be slippery (only knowledge that the gangplank was not, in fact, slippery might excuse the defendant's duty to warn of the possibility). Since the gangplank was sometimes slippery, if the defendant was not sure that the gangplank wasn't slippery (no one testified that it was not slippery), passengers had to be informed it might be slippery.

It cannot be disputed that a slippery gangplank is an unsafe condition and it involves an unreasonable risk to the Plaintiff (no benefit exists to counterbalance the associated risk of an injurious fall, a cure was simple). Defendant had reason to believe that the Plaintiff would not timely discover that the gangplank was slippery. Defendant failed to warn of the condition and failed to make the gangplank safe.

This case does not involve injury to an experienced seaman who regularly works on ships. This trip was, in essence, an entertainment. Most importantly, once the ship pulled away, Ms. Jain was unable to get off until it docked. She was a captive and defendant had an obligation to keep her safe. When the time came to disembark, no alternative to the gangplank was available.

The Defendant proposes two arguments in its own defense, the primary argument is that Ms. Jain was ordered to hold onto the handrails and she refused to do so or she failed to pay attention and listen to that instruction. Defendant has also suggested that the Plaintiff fainting caused the fall. Throughout Defendant's attempts to place the fall midway in order to avoid the

absence of railing and handholds at the top. Plaintiff remembers falling, stepping up, at the top. The fact that she admits not remembering certain things is helpful to her position and bolsters her credibility.

Dr. Winkler never examined the Plaintiff; although Plaintiff submitted to other examinations by Defendant. Dr. Winkler testified that he could not eliminate the possibility of Plaintiff fainting.

Dr. Winkler essentially testifies that he can eliminate other causes for the fall. He cannot testify to the likelihood of a cause without being able to assess other possibilities. The hospital records have a myriad of past medical history comments that do not mention fainting. The Plaintiff's difficulty with English and the fact that she was medicated explain any mention of dizziness. The terms spondylotheseis and the more common spondylosis, although they both involve discs, are not interchangeable. A layperson whose primary language is not English cannot be expected to know the word spondylotheseis even if she was afflicted. The existence of symptoms of either malady was not in evidence making even her awareness of this condition doubtful.

Fainting is not negligence unless the person had reason to believe she would faint. Fainting is involuntary and not an act or omission. Someone about to faint cannot be required to interpret the onset of symptoms (if the faint was not instant) and in that state also take some action that would avoid injury. Since fainting is not comparative negligence the defendant is completely liable if they are to a lesser degree negligent.

The Defendant's primary argument of comparative negligence in not holding on fails for lack of proof. No person alleges ever having observed Ms. Jain not holding the rails until she had already traveled midway down the gangplank (see testimony below).

Ms. Lisa Bodner, a disinterested passenger from New Jersey, testified at her 6/21/06 deposition as follows:

> A. They were gradually. I was pretty much, like I said, the first off because I had to get her [10 month old child] off the boat. As I was off the boat on the left side, I looked up at my mom and he was still wandering around the boat with my father and my nephew and my older daughter, and I just mentioned to them, just be careful when you head on down.
> Q. Do you remember your exact words?
> A.    Watch out. It's a little slippery.

Ann Berg another passenger and a grandparent with no connection with the case testified:

> A. I heard my daughter, who had already gotten off -- before that I heard a scream, and my daughter – then called us to take hold off the kid's hands because it's slippery.

Jonathan Bodner, a hospital lab supervisor and independent witness, testified:

> Q. Do you remember hearing anything, any conversation, while you were getting out of the whale watch boat?
> A. I do remember people saying the gangplank was slippery.
> Q. Did the crewmembers ever tell you to hold onto the rail?
> A. No
> Did any crewmember ever tell you the gangplank was slippery?
> A. No.
> Q. Did other passengers say that it was slippery before she fell?
> A. Yes
> Q. Now how did you know that the gangplank was slippery?
> A. When I stepped on it.
> Q. What did you experience when you stepped on it?
> A. I could feel my feet were slipping, so I grabbed onto the handrail.

On cross examination by defendant,

> Q. Okay has there been any time before you stepped into the room that you discussed anything about the case with Mr. Coniaris?
> A. No

It is a matter of common experience that a person can slip on a stairway, due to extremely slippery conditions, with such force that his hands would be loosened from the rail.

Defendant must prove Ms. Jain's comparative negligence. Defendant has the burden of showing that Ms. Jain's behavior in allegedly not holding the rail was either careless or willful. Defendant has not one scintilla of proof that Ms. Jain was not holding on from the top of the gangplank.

At the scene of the fall, non-medical personnel moved Ms. Jain off the ramp. The most nearby crewperson was a teenage relative of the owner. Ms. Jain's usually normal blood pressure went down to 80/40 and she was in so much pain, she became incontinent of urine. A parade of passengers observed her as she waited for an ambulance to arrive.

Defendants opposed the introduction of their own I.M.E. report and Plaintiff's medical reports, and had a person who never examined the patient testify instead.

Even if believed, the Defendant's claim of no past incidents has little value. The circumstances are different in every disembarkment, so the Defendant's claim of no past incidents has little value. No showing was made that anyone was in a position to make this blanket statement or that changes had not been made to the dock or gangplank. In light of all the testimony of other passengers almost falling on that day, the above assertion is not credible. No documentary evidence was introduced to support this position. Plaintiff objected to this testimony on foundation grounds.

Ms. Jain has been deprived of her almost perfect health. This injury turned her into a person with a physical limitation. Because the limitation is in a weight bearing part of the body it has a large impact upon her. Prior to the whale watch, Ms. Jain was very busy with her work, her family, and was an avid exerciser; jogging and practicing yoga. This injury unfortunately involves a weight-supporting component of Ms. Jain's body. She still experiences pain, has permanent

scarring, her ankles are two different sizes, and she has nine screws and a plate in her leg.

Damages should reflect the extent of the injury and its impact upon the quality of her life.

By plaintiff's attorney,

_____
JEFFREY C. CONIARIS
BBO# 555907
84 State Street
Boston, MA 02109
(617) 720-5888

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and any party appearing pro se by (first class mail, postage prepaid) or (by hand delivery).

Dated: 7/13/07